Jarrot *v.* Vaughn.

JULIA JARROT, plaintiff in error, *v.* JOSHUA VAUGHN, defendant in error.

*Error to Madison.*

The word "owner" has been repeatedly determined to mean a fee simple interest in the land; and a less estate will not authorize a recovery of the penalties mentioned in the statute against cutting timber.

A devisee for life only, with a naked and contingent power to dispose of a portion of the real estate of the testator, if necessary, for a special and limited purpose, and with remainder over, cannot maintain an action of debt under the statute, to recover the penalties for cutting timber.

DEBT under the statute for cutting timber, &c., brought by the plaintiff in error against the defendant in error. The cause was heard at the October term 1845, in the Madison Circuit Court, before the Hon. Gustavus P. Koerner and a jury. Verdict for the defendant, and judgment against the plaintiff for costs.

The pleadings and other proceedings appear in the Opinion of the Court.

*W. Martin*, for the plaintiff in error.

1. The plaintiff, under the will of Nicholas Jarrot, has such an estate in the premises, as to enable her to sustain an action of debt for cutting timber.

This Court has not decided that the plaintiff, to sustain this action, must be the owner in fee simple of the premises trespassed upon. Such a construction given to the law anthorizing this action, would implicate the legislature in unjust and partial legislation. It would deprive tenants for years, tenants in dower, tenants by the curtesy, and all other persons who have a life estate in lands, and who have an interest in the timber thereon, of the remedy provided by said law. An estate devised to one person for life, with the remainder in fee, would be placed beyond the remedy of this law, upon the principle, that during the life estate the fee simple is in abeyance, and resides nowhere. See 6 Mass. 251, as to the term "owner of the land;" and 1 Hilliard's Abr. 28, § 45, as to an estate in abeyance.

2. The plaintiff, under the will of Nicholas Jarrot, takes a fee simple in the premises.

The plaintiff by the will takes a life estate, with power to sell in fee for her own use, and at discretion. This creates in her a fee simple estate, for the reason, that the estate in reversion appointed by the said will could not be set up to defeat the estate in fee that the plaintiff may create by executing said power. Hence the reversion to the heirs of Jarrot is void. 16 Johns. 588-9; 8 Cowen, 284; 16 Vesey, 139; 19 do. 87; Bre. 46.

*N. D. Strong*, for the defendant in error.

1. What title has Julia Jarrot under the will of Nicholas Jarrot? If she had a fee simple, there is an end of the case. The will of the testator, his intention, is the best interpretation. He appoints his wife his executrix; gives her, not his estate, but the enjoyment of it during her life. There is no devise of it, no bequest of his property. "During her life," are the terms used; it is a simple enjoyment; nothing more.

By the seventh section, the executrix is empowered, out of this estate, immediately after his death, to allot to his children, a quantity of land, not more than three hundred and twenty acres, nor less than one hundred and sixty acres, in advance of the reversion to them, according to her judgment and discretion. It negatives the idea that the property was her own. No words could be more expressive. If she was to die before such an allotment to all, then the money was to be distributed to those who had received no allotment.

The eighth section is relied on by the plaintiff. It provides that she might sell for her support in case of a deficiency of income. He left a large estate, and wished her to be supported, and made this provision for the contingency of a deficiency of such income. Her only right was to make the application; she could not dispose of the property by will.

Then there was the provision for a remainder over to the children, in the tenth clause of the will.

The cases in Breese's, Johnson's and Cowen's Reports are against the positions of plaintiff; they do not apply to this

case.   The will of Nicholas Jarrot does not create an estate
in fee, but simply a life estate.

2.   The Court is bound to take the law as they find it.
There are four decisions of the Supreme Court on the subject.
This is a penal proceeding and intended as a punishment to
the offender.  2 Scam. 460.  Besides, the party may proceed
for actual damages sustained.   In regard to penal statutes,
the Court is referred to 4 Peters' Cond. R. 62.

The counsel for plaintiff contends that the legislature
never contemplated that the word "*owner*" should mean an
"*owner in fee simple.*"   He would have it apply to all kinds
of estates, but the Court will not extend the construction of
the statute.  *Wright* v. *Bennett*, 3 Scam. 259.   This Court
has decided that a mere possessory interest was not suffi-
cient to maintain the action, but intimated that a fee simple
was sufficient.   The case in the same volume, page 537,
confirms this view, as also the case in 4 Scam. 337.

The Opinion of the Court was delivered by

Young, J.* This was an action of *debt* brought by Julia
Jarrot, the plaintiff in error, to the October term of the Mad-
ison Circuit Court, 1844, against Joshua Vaughn, the de-
fendant in error, to recover certain penalties imposed by the
statute, for alleged trespasses by cutting timber trees on the
land of the plaintiff, between the 10th day of October, 1839,
and the commencement of the suit in October, 1844.

The defendant, at the same term, filed two pleas to the
declaration, to wit: *nil debet* and *liberum tenementum*.   The
plaintiff joined issue to the country on the first plea, and the
cause was continued without further proceedings, from time
to time, until the October term 1845, when the plaintiff by
her attorney filed a demurrer to the defendant's second plea
of *liberum tenementum*, which was joined by the defendant,
and the Court being of opinion, after argument, that the
declaration was insufficient, sustained the demurrer to the
declaration.   The plaintiff obtained leave and amended her

---

* Wilson, C. J., and Browne J., did not sit in this case.

declaration at the same term, to which the defendant pleaded *nil debet* only, and issue being taken thereon to the country, the cause was submitted for trial to a jury.

The plaintiff then produced in evidence, for the purpose of maintaining her action, after making the proper affidavits of loss, &c., first, the exemplification of the Patent from the United States to Joseph Bartlett, dated March 19, 1819, for the land mentioned in the declaration; and secondly, the record of a deed of conveyance from Joseph Bartlett and wife to Nicholas Jarrot for the same land, dated the 21st day of September, 1814; and then offered in evidence, for the purpose of showing title in herself as widow and executrix of Nicholas Jarrot, deceased, a copy of the last will and testament of the said Jarrot, dated the 6th day of February, 1818, and admitted to probate the 18th day of December, 1820, which is as follows:

"In the name of God, Amen; as it is certain that I must die, and that I do not know neither the hour nor the moment when it shall please God to determine my days, I, therefore, being in perfect health, have put order to my affairs in the following manner: In the name of the Father, and of the Son, and of the Holy Ghost, so be it. I give my body to the worms, and my soul to God, and supplicate his divine goodness to have pity on me. I implore the help of the Holy Virgin to be so good as to intercede for me towards the Divine Son all the days of my life, and at the hour of my death, so be it. I name for my executrix testamentary the person of Julie Beauvais, my wife, to whom I give the enjoying of all my property, as well real as personal that I may have after my death, and at the moment of my dying, for her to enjoy peaceably during her life; on condition that with my said property she will fulfil the conditions hereafter mentioned, that is to say; 1st. I request that my debts be paid by my executrix testamentary mentioned. 2d. I demand that my executrix testamentary get one hundred masses said, and one funeral high mass. 3d. I request that she give to the church the sum of one hundred dollars as soon as she can. 4th. I will that she distribute to the poor, as soon as

she can, a sum not exceeding two hundred dollars. 5th. I request also, that she procure the best education which is possible to be had in the United States for my two sons, François and Vital. 6th. I also request that she get instructed my two daughters, named Julie and Felicity. 7th. I also request, that my executrix testamentary aforesaid give to each of my children a quantity of land not exceeding more than three hundred and twenty acres, and not less than one hundred and sixty acres, to be taken off my said lands, and on the spots and places which the said executrix testamentary aforesaid may think proper to give them; which compensation and distribution, she shall make agreeably to the good behavior and situation of the said children. I will, in that case, her deliberation on this distribution be as if the aforesaid property were her own; and if, in the interim, when she would wish to make this distribution of said lands above mentioned, she was to die without fulfilling the distribution above mentioned, him or her of the children who had not received it, will have to take it in money before any division takes place. 8th. Express clause, which is, if Julie, my wife, and executrix testamentary, has not sufficient from the revenue of my property, as well real as personal, to make her live entirely independent, after all the clauses and conditions mentioned are fulfilled, to these reasons, I desire, and I will, that she sell so much of my property, real or personal, as she may think proper, and as she may want it, so that she may live in the most easy and most independent manner. 9th. It is expressly understood, that the legacies I make to my executrix testamentary are indépendent of all she has a right to in my estate in community with her, according to our contract of marriage, which part and portion appertaining to her, she may dispose of as appertaining to her in full right. 10th. After the death of said Julie, my executrix testamentary, all the residue of my property, real and personal, will return to my children born, or to be born, to be divided between them in equal shares, excepting a sum of three thousand five hundred dollars, which my oldest daughter, named Marie Louise Clayton Tiffin, shall have less than

my other children born, or to be born; and that for and because all that I received from the stock of the estate of her deceased mother, I have remitted to said Clayton Tiffin and to her, as appears by their receipt herein enclosed; another reason not less equitable to that, that the sum mentioned less than my other children is, that I have acquired a great deal of real property since I have been married with the said Julie Beauvais, my wife and executrix testamentary. Yet, another reason which puts the balance of justice in my hands, is, that I received at least two thousand dollars from the stock of the said Julie, my wife and executrix testamentary, coming from the estate of her deceased father, Vital Beauvais. Such are my wishes and intentions, which I request my executrix testamentary to put into execution, as being my last will and testament and act, revoking all others, &c. In testimony whereof, I have hereunto set my hand and affixed my seal, in the presence of the subscribers, at Cahokia, county of St. Clair, Illinois Territory, this 6th of February, 1818.

N. Jarrot."   [Seal.]

"Witness,
    Joseph Trotie,
    Raphael Widen,
    L. Lagrave."

It was then admitted by the defendant, Vaughn, that the timber trees were cut on the premises mentioned in the declaration, as therein alleged by the plaintiff. This was all the evidence produced on either side to the jury.

The Court was then asked by the defendant's attorney to instruct the jury,

1. That the word "owner," in the statute under which this action was instituted, means an ownership in fee simple; and

2. That the will of Nicholas Jarrot does not create such a title in the plaintiff as will enable her to recover in this form of action; which instructions were given by the Court, and a verdict returned by the jury on the issue of *nil debet* for the defendant.

The plaintiff's attorney then moved for a new trial, on the ground that improper instructions had been given to the jury, which motion was overruled by the Court, and the defendant had judgment for his costs.

From this judgment the plaintiff has prosecuted a writ of error to this Court, and now, at this term, assigns the following as causes of error, to wit:

1. The Circuit Court gave improper instructions to the jury;

2. The Court erred in overruling the plaintiff's motion for a new trial; and

3. The Court erred in rendering a judgment in favor of the defendant for costs.

This case presents but two questions at all necessary to be considered by the Court, both of which arise out of the instructions given by the Court to the jury on the trial below, and admit of but little argument.

The first as to the meaning of the word "owner" in the statute; and second, whether the will of Nicholas Jarrot creates such an ownership in the plaintiff as will entitle her to maintain this action.

The law provides, that the penalties for which such an action as this may be brought, "shall be recoverable with costs of suit, either by action of debt, in the name and for the use of the owner or owners of the land; or by action *qui tam* in the name of any person who will first sue for and recover the same."

It will be seen by an examination of the statute referred to, that it is of a highly penal character in its provisions, and as such, has always received a strict construction in its practical application by this Court. The word "owner" has been repeatedly determined to mean a fee simple interest in the land; and a less estate in the premises will not authorize a recovery by the plaintiff of the penalties mentioned in the statute. *Wright* v. *Bennett*, 3 Scam. 459, and *Whiteside* v. *Divers*, 4 do. 336.

In regard to the second question, the Court is of opinion that, according to a proper construction of the will of Nich-

olas Jarrot, it creates a life estate only in the plaintiff to the premises trespassed upon, which, according to the opinion expressed on the former question, will not be sufficient to enable her to sustain this action. It was contended at the hearing by the counsel for the plaintiff in error, that the will of Nicholas Jarrot contained a devise to the plaintiff, Julia Jarrot, as his widow and executrix, with power to convey the land in question in fee simple, and that such a devise carries with it the fee simple estate, and several authorities were referred to as supporting that position. It is unquestionably true, that such a devise would create an estate in fee simple, if such an one existed; but no such power was either given or intended by the will in this case, as has been supposed by the counsel. The language of the will, in the first instance, is, " I name for my executrix testamentary the person of Julia Beauvais, my wife, to whom I give the enjoying of all my property, as well real as personal, that I may have after my death, and at the moment of my dying, for her to enjoy peaceably during her life," &c. This clause shows that a life estate only was in the contemplation of the testator.

The eighth clause, which was much relied upon by the counsel, as creating a fee simple estate in the plaintiff, reads as follows: "If Julia, my wife and executrix testamentary, has not sufficient from the revenue of my property, as well real as personal, to make her live entirely independent, after all the clauses and conditions mentioned are fulfilled, to these reasons, I desire, and I will, that she sell so much of my property real or personal as she may think proper, and as she may want it; so that she may live in the most easy and most independent manner." This is a special, limited and contingent power to be used in the discretion of the plaintiff, for the purpose of securing to her during her life an independent living, and to that extent we have no doubt that she would have the power to sell and convey, and that the sale would be good and valid. But it would be a palpable perversion of the language and obvious import of the will, to give it a construction, that she had a general and uncontrolled power to sell. The tenth clause of the will fully explains

the testator's intentions in this respect. That clause provides "that after the death of the said Julia, my executrix testamentary, all the residue of my property real and personal will return to my children, &c." It is evident from these provisions in the will, that the testator intended, after the payment of his debts, certain legacies, &c., that the plaintiff should enjoy the use of all his property, as well real as personal, with power to dispose of so much of either as might become necessary, from time to time, to secure to her a comfortable and independent living; and that all the property remaining at her death should descend to, and be distributed among his children. And in respect to the necessity and propriety of disposing of portions of the real estate for such a purpose, she must, to a liberal extent, be allowed herself to determine, as it is very apparent, from the expressions used in the will, that it was not the intention of the testator to deal out to her with any thing like a sparing hand.

The case of *Tomlinson* v. *Dighton*, 1 Salk. 239, simply decides, "that a legacy for life, with a general power of appointment by deed or will, and not limited to the latter, gives the absolute interest." In this case there is no such general power of appointment, which may be exercised either by deed or will. In the case of *Barford* v. *Street*, 16 Vesey, 139, the Master of the Rolls said: "an estate for life with an unqualified power of appointing the inheritance comprehends every thing. By this unlimited power a person can appoint the inheritance." The whole equitable fee is thus subject to her present disposition; and in the case of *Jackson* v. *Robbins*, 16 Johns, 588, the Chancellor, upon revision of these authorities, said: " we may lay it down as an incontrovertible rule, that when an estate is given to a person generally or indefinitely, with a power of disposition, it carries a fee; and the only exception to the rule, is, where the testator gives to the first taker an estate for life only by certain and express words, and annexes to it a power of disposal. In that particular and special case, the devisee for life will not take an estate in fee, notwitstanding the distinct and naked gift of a power of disposition of the reversion. This distinction is carefully marked and settled in the cases." *Tomlinson* v.

*Dighton*, 1 Salk. 239; S.C., 1 Peere Williams, 149; *Reid* v. *Shergold*, 10 Vesey, 370; 2 Wilson, 6.

This case fully settles the question, if any authority were wanting, that, as the plaintiff in this suit was a devisee for life only, with a naked and contingent power to dispose of a portion of the real estate of the testator, if necessary, for a special and limited purpose, and with remainder over to the children, that she took nothing more than a life estate, and, consequently, cannot maintain this action.

The intention of a testator is always a cardinal point in the construction of wills, and in this case that intention is not left to doubt or conjecture.

In coming to this conclusion, however, we do not wish to be understood as deciding, either that the plaintiff is without a remedy, or that an ordinary action of trespass would not be sustainable under such circumstances as are stated in the declaration, and as were exhibited by the proofs at the trial before the jury.

Judgment affirmed with costs.

*Judgment affirmed.*